WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jill J Kenny,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-20-01735-PHX-DJH<br><br>**ORDER** |

At issue is the denial of Plaintiff Jill Kenny's Applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 21). Defendant SSA filed an Answering Brief (Doc. 25), and Plaintiff filed a Reply (Doc. 29). The Court has reviewed the briefs and Administrative Record ("AR") (Doc. 15), and it affirms the Administrative Law Judge's ("ALJ") decision (AR at 18-33) for the reasons addressed herein.

**I.　Background**

Plaintiff filed an Application for SSDI benefits on June 8, 2016, alleging a disability beginning on February 27, 2016.[1] (AR 18). Plaintiff later filed an Application for SSI benefits. Plaintiff's claims were initially denied on December 12, 2016, and upon

---
[1] Plaintiff was previously found not to be disabled in a decision by an ALJ on February 26, 2016. Plaintiff's new alleged onset of disability date is one day after the date of the first decision.

reconsideration on May 30, 2017. (*Id*.) A hearing was held before ALJ Rebecca L. Jones on July 15, 2019. (*Id.* at 93-147). Plaintiff was 50 years old at the time of the hearing and held relevant previous employment as an insurance sales agent, insurance clerk, and underwriter. (*Id.*) Plaintiff's Applications were denied in a decision by the ALJ on December 16, 2019. (*Id*. at 23). Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision and this appeal followed. (Doc. 1).

After considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the severe impairments of degenerative disc disease of the cervical, lumbar, and thoracic spines, polyneuropathy, obstructive sleep apnea, fibromyalgia, and carpal tunnel syndrome of the left wrist. (AR 21). While the ALJ noted that Plaintiff's severe impairments limited her ability to perform basic work activities, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, including prior work, and thus was not disabled. (*Id.* at 24-32).

Plaintiff argues that the ALJ erred in failing to give clear and convincing reasons to discount her subjective symptom testimony and in failing to give germane reasons to discount the opinion of nurse practitioner, Emily Tyler, A.C.N.P. ("Nurse Tyler"). (Doc. 21). The Commissioner argues that the ALJ's opinion is free of harmful error and must be affirmed. (Doc. 25). The Court has reviewed the medical record and will discuss the pertinent evidence in addressing the issues raised by the parties.

## II.  Legal Standards

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947,

954 (9th Cir. 2002) (citations omitted). Whether the Commissioner's decision is supported by substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.  Analysis**

Plaintiff raises two issues on appeal, that the ALJ erred in failing to give clear and convincing reasons to discount her subjective symptom testimony and that the ALJ erred in failing to give germane reasons to discount the opinion of Nurse Tyler. (Doc. 21). The Court will consider these issues in turn.

    **A.**    **The ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues that the ALJ did not give legitimate and convincing reasons supported by substantial evidence for discounting her subjective symptom testimony. (Doc. 21 at 15-23). The Commissioner argues that the ALJ properly examined the medical evidence to determine that the record did not support Plaintiff's testimony as to the severity of her symptoms. (Doc. 25).

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony after a claimant produces objective medical evidence of an underlying impairment, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). However, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains his decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Plaintiff testified that she was unable to perform any work due to pain in her neck, back, joints, hands, and feet. (AR 114-15). Plaintiff testified that due to her neck pain, she was unable to sit at a desk, and that due to her carpel tunnel syndrome, she was unable to type on a computer keyboard. (*Id.* at 116, 134). Plaintiff also testified that she could walk about a half of a mile with her walker, and that she could only sit for 20 minutes at a time.

Plaintiff acknowledged that physicians had recommended surgery for her impairments, but that she opted not to have surgery because of a past bad experience with Propofol. (*Id.* at 118). She also testified that she had trouble sleeping through the night and that her physicians diagnosed sleep apnea and recommended she use a CPAP machine. (*Id.* at 830). Despite her symptoms, Plaintiff testified that she manages personal care and hygiene, occasionally drives, does laundry, does the grocery shopping with the assistance of a motorized cart, goes to the movie theater, watches television, and visits with family. (*Id.* at 129-135).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence, including her own statements and testimony regarding activities of daily living. (*Id.* at 25-26).

To support this finding, the ALJ discussed treatment records showing that Plaintiff's symptoms generally improved with medications and injections. (AR 25, 850). The ALJ discussed a February 29, 2016 treatment note for a left knee epidural injection, at which Plaintiff reported receiving great relief from a similar injection in the past. (*Id.* at 479, 483). The ALJ also discussed treatment records from March 2016, where Plaintiff's musculoskeletal range of motion was within fair limits and presented no evidence of instability in the upper or lower extremities. (*Id.* at 496-97). The ALJ discussed a November 2016 exam where Plaintiff's cervical spine demonstrated normal range of motion. (*Id.* at 851). As to Plaintiff's issues with sleep apnea, the ALJ noted that while her physicians recommended using a CPAP machine at night, Plaintiff opted to use oxygen instead. (*Id.* at 838).

The ALJ also discussed a number of other clinical findings discussed in the medical records to conclude that Plaintiff's symptoms were not as severe as alleged. For instance, in January 2017, Plaintiff presented to her neurologist, Dr. Schultz, requesting a larger dose of medication. (AR 867). Dr. Schultz stated that her symptoms were not in line with what

was seen on imaging and the amount of medication she was taking was out of proportion to her symptoms. (*Id.*) Dr. Schultz also noted that Plaintiff "virtually smothered me with symptoms" at a January 2017 medical appointment, and further noted that none of her reported symptoms "were in line with what was seen on the cervical MRI scan." (*Id.* 867-68). Additionally, as to Plaintiff's complaints of diminished senses in both of her feet, her neurologist noted that "none of it made any sense." (*Id.* at 868). The ALJ also discussed that Plaintiff asked her physician for a walker, which was provided to her, although her treating physician noted that the walker seemed "out of proportion" to her impairments. (*Id.*)

The ALJ also discussed her own observations of Plaintiff at the hearing. (AR 28). Plaintiff testified that she could only sit for 20 minutes at a time. (*Id.* at 129). Shortly thereafter, the ALJ noted that Plaintiff had been sitting for nearly one hour and invited her to stand up if she was uncomfortable. (*Id.*) Plaintiff continued to sit for another five to ten minutes before briefly standing. (*Id.*) The ALJ noted that Plaintiff's ability to sit for an hour while at the hearing was inconsistent with her testimony that she could only sit for 20 minutes at a time and would therefore be unable to sustain any employment. (*Id.*)

Plaintiff also takes issue with the ALJ's finding that Plaintiff received only "conservative" treatments and refused to get surgery as recommended by her physicians, arguing in her Brief that she testified that she had bad experiences "with anesthesia." (Doc. 21 at 14). However, what Plaintiff testified to at the hearing was a prior bad experience with Propofol. (AR at 117-118). In fact, the ALJ enquired as to whether Plaintiff had explored any of the many other available anesthesia medications with her physicians and Plaintiff responded that she had not. (*Id.* at 118). Therefore, the Court finds that it was relevant for the ALJ to mention Plaintiff's failure to elect surgery in her decision. Moreover, the ALJ can properly consider the types of treatment a claimant is receiving to determine whether her symptom testimony is credible. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotations and

citation omitted). An ALJ is also free to consider the amount of treatment a claimant receives for an impairment in determining the nature and severity of the impairment, as well as medication and any other measures used. 20 C.F.R. §§ 404.1529(c)(3)(iv)–404.1529(c)(3)(vi). The Court finds no error here.

The ALJ properly and thoroughly concluded that the examinations in the medical record did not support Plaintiff's claims of disabling limitations, and therefore, properly found that her subjective symptom testimony was not persuasive. While Plaintiff may see this evidence in a different light, the Court cannot second-guess the findings of the ALJ when there is no error in the discussion of the symptom testimony. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court finds that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony. *See Brown-Hunter*, 806 F.3d at 488–89.

### B.   The ALJ gave germane reasons to give little weight to the opinion of Nurse Tyler.

Plaintiff argues that the ALJ failed to give germane reasons to reject the opinion of her treating nurse practitioner, Nurse Tyler, instead giving great weight to a state agency reviewer. (Doc. 21 at 23). Plaintiff argues that the Court should credit Nurse Tyler's opinion as true and remand this matter for an award of benefits.

At the time Plaintiff filed her Application, Nurse Tyler was not considered an "acceptable" medical source, but rather was an "other source" opinion. *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017). Thus, to reject her opinion, the ALJ only needed to provide "germane" reasons for doing so. *Id.* at 906; *see also* 20 C.F.R. § 406.913(a) (defining acceptable medical sources as licensed physicians and psychologists), 416.913(d) (defining other sources as medical professionals not listed in subsection (a)); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam) (ALJ need only give germane reasons to reject an "other source" opinion). Thus, while merely stating that a nurse's status as an unacceptable medical source would not be a germane reason to reject her

opinion, the ALJ need only cite reasons relevant to that witness to properly reject the opinion. *See Camilli v. Berryhill*, No. 18-CV-06322-JSC, 2019 WL 3412921, at *8 (N.D. Cal. July 29, 2019) (citing *Popa*, 872 F.3d at 907).

Nurse Tyler completed a six-question check-box questionnaire where she opined that Plaintiff had constant deficiencies in concentration, persistence and pace, resulting in a failure to complete tasks in a timely manner. (AR 947-48). Nurse Tyler checked that Plaintiff "constantly" experienced severe pain that interfered with attention and concentration. (*Id.*)

The ALJ first noted that this opinion was not supported by the objective medical evidence, including Nurse Tyler's own exam findings showing normal cervical and lumbosacral ranges of motion, intact sensation, and negative straight leg raises. *See* 20 C.F.R. § 404.1527(c)(4) (the ALJ is charged with evaluating the "consistency of [an] opinion with the record as a whole"). In so finding, the ALJ specifically discussed clinical findings and examination notes. (AR 31). The ALJ also found Nurse Tyler's questionnaire to be inconsistent with the many normal physical exam findings throughout the medical record and cited to those specific records. (AR 31; citing 496-97, 605, 615, 738, 795, 798, 801, 826, 912, 958, 961, 965, 968, 974, 1043, 1048, 1078-79, 1170, 1204, 1222, 1282, 1287-88, 1292, 1300). These are germane reasons to give little weight to an other source opinion.

Based on all these reasons, the ALJ determined that Nurse Tyler's opinion would be given little weight. The Court finds that the ALJ provided germane reasons for giving little weight to this opinion. The ALJ did not err here.

**IV. Conclusion**

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ properly considered the medical and lay opinion evidence of record and properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence. *See Orn*, 495

F.3d at 630.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the ALJ is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 20th day of January, 2022.

Honorable Diane J. Humetewa
United States District Judge